UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| GEICO GENERAL INSURANCE CO., | ) |
| Plaintiff, | ) |
| v. | ) No. 6:20-CV-239-REW |
| | ) OPINION & ORDER |
| UNITED STATES OF AMERICA, et al. | ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The United States[1] moves to dismiss the complaint filed by Plaintiff Geico General Insurance Company ("GEICO"). DE 7. The United States asserts that under a Federal Tort Claims Act analysis and statutory interpretation of the Kentucky Motor Vehicle Reparations Act ("KMVRA"), it is entitled to immunity from suit in this case and that this Court lacks subject matter jurisdiction. *Id.*; FED. R. CIV. P. 12(b)(1), (6). Under binding Sixth Circuit precedent, the Court agrees. The Motion to Dismiss is **GRANTED**.

I.      Factual Background

The facts of this case are simple and, in this context, taken as true. On February 22, 2019, United States Postal Service ("USPS") employee Casey Payne was operating a vehicle owned by the USPS in the course and scope of employment. DE 1, at 2. Payne failed to yield to oncoming traffic when entering a roadway, colliding with GEICO's insured. The insured then sought and

---

[1] The United States Postal Service ("USPS") is a named defendant in this case as well. However, the USPS is a federal agency and not subject to suit under the FTCA, which permits suit only against the United States. 28 U.S.C. §§ 2679(a), 1346(b); *see also Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990). GEICO did not respond to the United States's assertion on this point; the Court deems that matter conceded.

1

received basic reparation benefits (BRB) in the amount of $10,000 from GEICO, under the Kentucky no-fault statutory scheme for motor vehicle accident liability. *Id.* at 3. GEICO paid BRB to its insured, then sought recovery, via subrogation, from the USPS and the United States. *Id.* The USPS denied GEICO's claim under the Federal Tort Claims Act, and GEICO initiated this suit. The United States then moved to dismiss for lack of subject matter jurisdiction. DE 7. The matter is briefed. DE 8 & 9.

II. Standard

A party may move to dismiss a claim over which the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion alleging lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). A facial attack questions whether the plaintiff has alleged a basis for subject matter jurisdiction, challenging the sufficiency of the pleading itself. *Id.* The Court must take the allegations of the complaint as true. *Id.* "A factual attack challenges the factual existence of subject matter jurisdiction." *Id.* In a factual attack, the "court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 760.

Although the motion here may be characterized as either a facial or factual attack, because of the interdependent nature of the factual and jurisdictional elements of an FTCA claim, the Court will analyze the motion to dismiss as a facial attack because the thrust of the United States's argument is that it has not waived sovereign immunity under the FTCA, and the facts are largely undisputed. *See In re Flint Water Cases*, 482 F.Supp.3d 601, 615 (E.D. Mich. 2020) ("The United

States brings a facial attack on the sufficiency of Plaintiffs' complaint by arguing that under the facts set forth above, there would be no liability under state law—a necessary prerequisite to bring a claim under the Federal Tort Claims Act."). "To survive a Rule 12(b)(1) motion, the burden is on the plaintiff to prove that the court has subject matter jurisdiction." *See Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

### III. Legal Discussion

"In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees" when acting within the scope of employment. *F.D.I.C. v. Meyer*, 114 S. Ct. 996, 1000 (1994). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 114 S. Ct. at 1000 (citing *Loeffler v. Frank*, 108 S. Ct. 1965, 1968 (1988)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 103 S. Ct. 2961, 2965 (1983). The FTCA grants federal courts subject matter jurisdiction over state law tort claims against the United States. 28 U.S.C. § 1346(b)(1). The statute states that:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.*

Additionally, a 1988 amendment to the FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

"Federal courts have jurisdiction over [state law tort claims] if they are 'actionable under § 1346(b).'" *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (citing *Meyer*, 114 S. Ct. at 1001). The text of the FTCA makes clear that an actionable claim must be: (1) against the United States; (2) for money damages; (3) for personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of the office or employment; and (6) under circumstances where the United States, if a private person comparably situated, would be liable to the claimant in accordance with the law of the state where the act occurred. *See* 28 U.S.C. § 1346(b)(1); *Brownback*, 141 S. Ct. at 746.

Here, the United States cited both Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim upon which relief may be granted) as grounds for its motion to dismiss. DE 7. In the typical case, a plaintiff's failure to plausibly allege a claim for relief under Rule 12(b)(6) will not deprive a federal court of subject matter jurisdiction. *See Brownback*, 141 S. Ct. at 749 (citing *Steel Co. v. Citizens for Better Environment*, 118 S. Ct. 1003 (1998)). Claims under the FTCA are unique, however, in that the factual elements necessary to establish a claim under the FTCA are also jurisdictional. *See Brownback*, 141 S. Ct. at 749. A plaintiff is not required to prove a jurisdictional element under the FTCA to establish subject matter jurisdiction, but " a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief may be granted but also for a court to have subject matter jurisdiction." *Id.* This means that a failure

4

to state a claim upon which relief may be granted will also be a corresponding failure to properly allege subject matter jurisdiction in FTCA cases. *Id.*

The statutory scheme here also creates the unusual situation where a court may both find that it lacks subject matter jurisdiction and reach the merits of a claim. A finding that a court lacks subject matter jurisdiction will typically bar that court from reaching the merits. *See Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1244 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."). However, because the FTCA melds the merits and jurisdictional requisites, a court may properly find that it lacks jurisdiction and make a merits-based finding. *See Brownback*, 141 S. Ct. at 749; *Meyer*, 114 S. Ct. at 1001.

   a. *Binding precedent requires dismissal.*

The Court begins where it must, all arguments aside, end. The Sixth Circuit confronted the same statutes and the precise question in *Young v. United States*, 71 F.3d 1238 (6th Cir. 1995) and decided the matter. Of course, a published circuit decision binds this Court. *See United States v. Roper*, 266 F.3d 526, 529 (6th Cir. 2001) ("[A] prior published opinion of this court is binding unless either an intervening decision of the United States Supreme Court requires modification of the prior opinion or it is overruled by this court sitting en banc . . . ."). *Young* declared, in a postal service case, where a reparation obligor sought to assert subrogation rights against the United States, that the United States would have no FTCA liability: "[t]he United States is immune from the subrogation liability[.]" *Young*, 71 F.3d at 1246. GEICO cites intervening Kentucky law,[2] in distinct contexts, in an effort to weaken *Young*. Though the Court is not persuaded, even if it were,

---

[2] GEICO does not suggest that the underlying statutes or definitions have changed. A state decision, such as *City of Louisville v. State Farm Mutual Auto. Ins. Co.*, 194 S.W.3d 304 (Ky. 2006) does not have the power to "overrule" the holding of a federal circuit case.

5

*Young* stands until the Circuit says otherwise. Functionally, the matter ends there, but the Court will comment on the merits.

### b. The merits of the arguments

The parties do not dispute that the first five elements of an FTCA claim, identified by the Supreme Court, are met here. They sharply disagree as to whether the sixth element is met—that is, whether the United States, to the extent of the liability of a private person under the facts as pleaded, would be liable under Kentucky law.

Because the United States is not and cannot act exactly as a private person, to determine the extent of the waiver of sovereign immunity under the FTCA, federal courts "[analogize] the United States to a private actor in a similar situation under the appropriate state law." *Young,* 71 F.3d at 1244 (citing *LaBarge v. County of Mariposa*, 798 F.2d 364, 366 (9th Cir. 1986)); *see also Carter v. United States*, 982 F.2d 1141, 1144 (7th Cir. 1992) (stating that "[t]he national government is never situated identically to private parties," and that the task "is to find a fitting analog under private law.").

The state law at issue here is the KMVRA. Thus, the resolution of this case rests, in part, on interpretation of that statute to determine the proper private analogue to the United States in these circumstances. If a private individual standing in the United States's position would be liable under the KMVRA, then the United States itself may be liable. If not, then the case must be dismissed for lack of subject matter jurisdiction.

The KMVRA was enacted in 1974 in response to the high volume of automobile accidents experienced by citizens in Kentucky, and to provide relief from the great expense and burden occasioned by such accidents. *See* KRS § 304.39-010. In particular, the KMVRA was meant to "reduce the need to resort to bargaining and litigation through a system which can pay victims of

motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system" and "to correct the inadequacies of the present reparation system . . . ." KRS § 304.39-010(5). The statute employs a no-fault basis for liability such that "every person suffering loss from injury arising out of . . . use of a motor vehicle has a right to basic reparation benefits," benefits which "shall be paid without regard to fault." KRS §§ 304.39-030, 304.39-040. Basic reparation benefits ("BRB") are benefits providing reimbursement for net loss suffered in one motor vehicle accident, up to a maximum of $10,000. KRS § 304.39-020(1). BRB are paid by the basic reparation obligor and the assigned claims plan. KRS § 304.39-040(2). A "reparation obligor" is "an insurer, self-insurer, or obligated government providing basic or added reparation benefits under [the] subtitle." KRS § 304.39-020(13). As *Young* determined, the United States is not a reparation obligor, and thus not required to pay BRB under this subsection, because it categorically is not an insurer, self-insurer, or obligated government. Each of these is a defined term or term of art.

The United States is not an insurer. The statute does not define "insurer," so the Court looks to the plain and ordinary meaning of the statutory language. *See FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1182 (2011) ("When a statute does not define a term, we typically 'give the phrase its ordinary meaning'".) (citing *Johnson v. United States*, 130 S. Ct. 1265, 1267 (2010)). "Insurer" in the context of a motor vehicle law, indicates that it is meant to cover commercial suppliers of insurance where the relationship of the insured/insurer exists through a contract and/or payment of premiums. *See* Black's Law Dictionary (11th ed. 2019) (defining "insurer" as "someone who agrees, by contract, to assume the risk of another's loss and to compensate for that loss"); *see also Young*, 71 F.3d at 1243 (finding that "the term 'insurer' in the statute speaks clearly to mean

7

commercial insurance companies providing no-fault benefits under the Kentucky no-fault statute.").

The United States is not a self-insurer. To be a "self-insurer," an individual must apply for such status and gain approval from the Kentucky commissioner of insurance. *See* KRS § 304.39-080(7) (stating that self-insurance status is "subject to approval of the commissioner of insurance" and requiring affirmative application to achieve such status). The United States has not applied for or been approved for "self-insurer" status. Thus, it is not a self-insurer.

Finally, the United States is not an obligated government. The statute permits the United States to "lawfully obligate itself to pay basic reparation benefits" and thus be qualified as an "obligated government." KRS § 304.39-080(4); *id.* at (8)(noting option as obligation "in accordance with this subtitle"). It provides that "[t]he United States . . . may provide . . . security for the payment of basic reparation benefits in accordance with this subtitle for injury arising from maintenance or use of motor vehicles . . . ." *Id.* at (3). As the Sixth Circuit explained, "[t]he United States did not expressly opt into the Kentucky no-fault scheme, [so] the federal government does not qualify as an 'obligated government' for subrogation purposes under the [KMVRA]." *Young*, 71 F.3d at 1244. "Obligated government" status relies not only on the liability protections that a government entity may provide, but on that government entity's affirmative election to obligate itself under the KMVRA strictures. The fact that the United States may provide coverage similar to BRB would not itself qualify the United States as an obligated government under the statutory rubric. The statute requires a particular, volitional election.

GEICO paid the required basic reparations benefits to its insured. Under the statute, a reparation obligor can seek reimbursement for BRB paid only from an unsecured person or the reparation obligor (insurer, etc.) of a secured person. KRS § 304.39-070(2)-(3). Subrogation is not

8

available from a secured person. *See City of Louisville*, 194 S.W.3d at 306 (citing *Young*, 71 F.3d at 1243). As stated, the United States is not a reparation obligor, so it must be an unsecured person for GEICO to be able to recoup BRB from it under the statute. If instead, the United States is a secured person, then GEICO has no right to seek subrogation from it. This is exactly the path *Young* definitively blazed.

A "secured person" is "the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." KRS § 304.39-070(1). As the employer of the United States Postal worker that caused the accident in this case, and, per the FTCA, the United States qualifies as a "person or organization legally responsible" for the actions of the driver. However, for "secured person" status to exist, the USPS truck involved must also be a secured motor vehicle, per the plain language of the statute.

The KMVRA does not define "secured motor vehicle" but it does define "security covering the vehicle" as "the insurance or other security so provided." KRS § 304.39-080(1). It further states that "[t]he vehicle for which the security is so provided is the secured vehicle." *Id.*; *see also State Farm*, 194 S.W.3d at 307 ("[I]f there is no 'security covering the vehicle,' the vehicle is not a 'secured vehicle' and the owner and operator are not 'secured persons.'"). Additionally, the KMVRA defines "security" as "any continuing undertaking complying with this subtitle, for payment of tort liabilities, basic reparation benefits, and all other obligations imposed by this subtitle." KRS § 304.39-020(17). In *Young*, the Sixth Circuit assessed the status of the federal government vis a vis these definitions. *Young* surveyed the application of and interplay between the Federal Employees Compensation Act and the FTCA and expressly determined that "United States provided the functional equivalent of the security required" by KMVRA. *Young*, 71 F.3d at

9

1245. The federal scheme equated to "other security," complying with the KMVRA, and rendered the affected postal vehicle a "secured motor vehicle." *See id.* The *Young* court viewed the Government's status through a prism that accounted both for employee loss and third-party loss, finding that "coverage under the statutes exceeds the coverage mandated by" the KMVRA. *Id.* at 1245. *Young* found that the federal government "assum[es] full responsibility for the negligence of federal employees operating motor vehicles on the by-ways of the commonwealth [of Kentucky]." *See id.* (citing 5 U.S.C. §§ 8101-8193 ((The Federal Employees Compensation Act) and the Federal Tort Claims Act).

Plaintiff GEICO takes issue with *Young*'s finding that the United States meets the definition of a "secured person" under the statute. DE 8, at 8 (Pl's Opp. to Mot. to Dismiss). The criticism oversimplifies the Sixth Circuit's careful analysis.

*Young* tested first and textually applied the governing statutory "reparation obligor" definitions. After faithfully applying those, it then moved to evaluate how the United States, with its actual coverages in place considered, would fair by analogy to a putative private party in the "secured person" analysis. There, the Court viewed the Government has having protections and obligations beyond what the Kentucky scheme otherwise would require. As such, the "secured motor vehicle" finding, and resultant immunity, easily followed. GEICO focuses on the lack of an explicit BRB obligation, but the Circuit tested the economic realities and found a functional equivalency: "The United States has thus provided the functional equivalent of basic reparation benefits[.]" *Id.*

Plaintiff relies heavily on *City of Louisville v. State Farm* to assert that a vehicle cannot be "secured" under the statute unless the owner or responsible entity provides statutory BRB benefits specifically. This argument misses the subtle distinctions between *Young* and *City of*

10

*Louisville*. The Kentucky Supreme Court in *City of Louisville* found, as the City readily conceded, that Louisville did not provide BRB benefits *at all*; the City instead relied on an annual appropriation of funds to cover tort liability incurred by its employees. *City of Louisville*, 194 S.W.3d at 306-07. Unlike in *Young*, the City did not argue that it operated under a system that featured or was equivalent to BRB. This allowed the Supreme Court an easy, binary analysis. Louisville was not, by virtue of its failure to obligate itself to BRB, a reparation obligor, so it likewise could not have the status of a secured person. True enough there. The federal government is, relative to its liability and employee compensation schema, in a very different place, as *Young* found.

Finally, a few additional points. GEICO bridles against the thought experiment the FTCA demands. It insists on identification of the "private person" that serves as comparator to the federal government. This facile approach misses the mark because the Government is unique. That does not prevent a court, like *Young*, from assessing the Government's status and attributing key characteristics to a putative, though hypothetical, private person and then weighing liability. That is what *Young*, which properly worked by fitting analogy, did.[3]

Further, is the Government comparatively better off? By not holding reparation obligor status, the United States does not face a subrogation claim, but it also may not have such a claim when paying an employee or third-party by virtue of a covered tort. Additionally, *Schmidt v.*

---

[3] Judge Russell entertained an installment of the same recurring drama in *State Farm Mut. Auto. Ins. Co. v. United States*, 651 F. Supp. 2d 714, 718 (W.D. Ky. 2009) ("Therefore, as a matter of federal law, the holding [of] *City of Louisville* is inapplicable to the present case because the Sixth Circuit has determined that the United States provides the functional equivalent of basic reparation benefits under Kentucky law."). If providing BRB is the measure of "security," and if *Young* affirmatively declares that the Government is, functionally, providing BRB, that logically ends the secured party analysis.

*Leppert,* 214 S.W.3d 309 (Ky. 2007) relied on by GEICO, suggests to this Court that a probing analysis of the contents of a party's coverages, querying for the existence of, *e.g.*, BRB, in fact is fully consistent with Kentucky law. *Young* basically did just that when it evaluated how the Government functionally presented relative to the coverages required under the KVMRA.

Because the United States is neither a reparation obligor nor an unsecured party, there is no statutory basis for GEICO to seek recoupment of the BRB it paid. A private individual standing in the shoes of the United States would not be liable in Kentucky, so the United States is not liable in Kentucky. Because the jurisdictional elements necessary to make out an FTCA claim are not present, this Court lacks subject matter jurisdiction. In addition, and for the same reason, the Plaintiff has failed to plead facts sufficient to state a plausible claim for relief; the United States is immune. The Court **GRANTS** the United States's motion to dismiss.

This the 21st day of January, 2022.

Signed By:
*Robert E. Wier* REW
United States District Judge